IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID P. BOURKE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DENIS RICHARD MCDONOUGH, )<br>Secretary, U.S. Department of )<br>Veterans Affairs, )<br>)<br>Defendant. ) | Case No. 22 C 3164 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

David Bourke, an employee of the U.S. Department of Veterans Affairs, filed this suit against Denis McDonough in his official capacity as the Secretary of Veterans Affairs (VA). Bourke alleges that the VA violated the Rehabilitation Act's nondiscrimination provision, 29 U.S.C § 794, by failing to provide him with a reasonable accommodation for his disability. The parties have filed cross-motions for summary judgment. For the following reasons, the Court grants summary judgment in favor of the defendant.

## Background

The following facts are undisputed for purposes of the cross-motions for summary judgment unless otherwise noted. Bourke is a U.S. Navy veteran and has been employed by the VA since October 2009 at the Edward Hines Jr. VA Hospital in Hines, Illinois. As a result of various medical conditions, Bourke's ability to walk, even

with the assistance of a walker or cane, is limited. To get around, he uses a motorized scooter. The scooter can be taken apart so that it can be moved or stored. Some of the pieces, however, weigh approximately 40 pounds and are too heavy for Bourke to lift on his own.

During the relevant time period, Bourke was assigned to a work station in the basement of Building 200 on the Hines campus. The closest entrance to his work station was the outpatient pharmacy entrance at the rear of Building 200. In August 2019, the VA granted Bourke's request for a reserved parking space behind Building 200, along with a sign designating it as "reserved parking," as a "reasonable accommodation" for Bourke's disability. Pls.' Stmt. of Material Facts ¶ 9–10. This spot was the closest parking spot to Bourke's work station. Because the scooter was too heavy for Bourke to load and unload into his car each day, he requested the installation of an electric lift in his car through his veterans' benefits. In the meantime, Bourke stored his scooter overnight at Hines so that he could use it throughout the work day without having to load and unload it every day. Each morning, Bourke would park his car in his reserved parking spot, walk to the pharmacy entrance, and take the elevator down to the basement, where he would retrieve his scooter. The parties dispute whether Bourke simply parked the scooter in a corner near his work station or whether he stored the scooter in a "locked office." *See* Def.'s Resp. to Pl.'s Stmt. of Material Facts ¶ 11. At the end of his shift, Bourke would park his scooter in the same spot, take the elevator to the main floor, and walk to his reserved parking spot. This routine was an acceptable accommodation from Bourke's perspective, at least while he awaited the installation of the electric lift for his car.

On March 12, 2020, the VA sent an e-mail to all Hines employees informing them that, in response to the COVID-19 pandemic, the VA would require all Hines employees and visitors to enter the facility through designated entry points so that they could be screened for COVID-19 symptoms each day beginning on March 16, 2020. The e-mail provided a list of "designated access points" that all Hines employees could use. For Building 200, there were two designated access points: the "Main Entrance Lobby," which would be accessible from 6:00 am to 10:00 pm, and the "Emergency Room Entrance," which would be accessible 24/7. Def.'s Stmt. of Material Facts, Ex. 15 at 1–2. All other entrances to Building 200 would be closed beginning March 16, 2020, including the pharmacy entrance that Bourke routinely used.

On March 13, 2020, Bourke e-mailed Eric Ousley, the Deputy Chief of the VA Police Department, regarding the planned closure of the pharmacy entrance. Bourke wrote, in relevant part:

> I enter Bldg. 200 at the back by outpatient pharmacy due to my Hines VA reasonable accommodation requires I park in spot #1011. I need entry by this entrance due to my disabilities and cannot walk very far. I usually arrive at the back of Bldg. 200 around 5:00am to 5:15am. Is this entry open at 5:00am? Please contact me and about entry by this designated parking spot I have. I spoke with Major McFields [of the VA Police Department] on my lunch and he told me to call (708)2022013 upon my arriving at the back of Bldg. 200 and someone will have to open up this door so I can enter? If this [is] the course you want me to use please call or email about this issue. [. . .]

Pl.'s App., Ex. 1. Although the parties appear to disagree over the exact details, it is undisputed that Bourke continued to use the pharmacy entrance after the restrictions went in effect on March 16, despite the fact that it was not a designated access point as specified in the VA's March 12 announcement. *See* Pl.'s Reply to Def.'s Mot. for Summ. J. at 2; Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 28. Bourke would then go down to

3

the basement, retrieve his scooter, and ride on his scooter through the facility to one of the designated access points to be screened. In other words, for the first two months of COVID-related restrictions, Bourke's accommodation continued to work more or less the way it had before.

About two months later, on May 14, 2020, a Hines administrator instructed the VA Police to lock the pharmacy entrance in response to a complaint that employees were entering via that entrance without undergoing the required screening. Bourke therefore was unable to use that entrance that morning. That same day, Bourke spoke with and e-mailed Deputy Chief Ousley and Shawn Schrier, the Local Reasonable Accommodation Coordinator, about the issue. Bourke's e-mail stated, in relevant part:

> I have spoken to the both of you this morning Thursday 5/14/20, about having HR and Hines police, help me in obtaining a new reasonable accommodation parking spot due to my disabilities causing hardship and pain in walking. My disabilities severely limit my ability to ambulate any distance. I [am] hoping the Hines police and Hines human resources, can work together and quickly get a new reserved parking spot assigned to me until the back of Bldg. 200 is opened up again for entrance? I don't know of any area room or closet, in the [Emergency] department, where I could lock up my electric scooter safely and have a key to access it when needed? I understand the agreement I had, was rescinded and I understand why, but this still doesn't help me accessing my place of employment (Hines VA hospital ASU, Bldg. 200 basement room B 019[)]. I will be forced to park out front, which will require me to try and walk a greater distance to my duty area with-in the hospital. The point of this email is to promote communication between the Hines police and Hines human resources in obtaining the closest handicap parking spot available (ASAP) to my duty station location. Please help me in <u>re-obtaining</u> my already <u>awarded reasonable accommodation parking spot</u>, and if possible find-locate a locked room-closet (<u>which I will have my own key</u>) for the safe keeping of my scooter up front by the Hines ED. [. . .]

Def.'s Stmt. of Material Facts, Ex. 16. That same day, Hines staff began looking into the situation. For example, after receiving the e-mail, Christopher Wirtjes, the chief of Bourke's unit, stated in an internal e-mail that same day: "This is first that I have heard

4

of this concern. I will reach out to the supervisor and see what has been done to assist this employee." Def.'s Stmt. of Material Facts, Ex. 18 at 3.

Schrier and Angela Graham, who was Bourke's immediate supervisor, began looking for options that would accommodate Bourke. On May 15, 2020, they "considered Bourke's request that he be assigned the first handicapped parking space near the entrance to the ER." Pls.' Resp. to Def.'s Stmt. of Material Facts ¶ 36. But "[w]hile Graham was able to identify a wall in the ER waiting area with an outlet for charging, there was no secure space for Bourke to store his scooter near the ER or main entrances." *Id.* ¶ 37. "Additionally, Wirtjes, Graham's chief, did not believe he could get authorization for Bourke to leave his scooter in the area of the ER entrance because it was a 'high traffic area on off tour [ ]' hours when Bourke would need to store his scooter there." *Id.* ¶ *38.* There were also concerns that assigning the public handicap spot to a single individual would decrease the handicap parking available for patients entering the ER and that, even if it were assigned to Bourke, the VA police would have difficulty preventing people from improperly parking in the reserved space.

Instead, the VA ultimately identified a parking spot in front of the "Building 1, Section C" as the proposed reasonable accommodation. *Id.* ¶ 50. Inside this building, there was a "Patient Advocate Department" area where two other employees—Graham and a doctor—had been storing their own mobility scooters in response to the COVID-19 restrictions. The Patient Advocate Department space was not a "dedicated, locked room" for Bourke's scooter. *Id.* ¶ 44. However, it "was outside of the public view and common areas, was near the VA Police Department, and was not a space with after-hours traffic." *Id.* Nevertheless, Bourke did not believe that his scooter could be safely

5

stored in the Patient Advocate space because unlike the "larger scooters" used by Graham and the doctor, Bourke's scooter was "easy to steal" because it was a "go-go scooter, which is one that can [be broken down] and fit in the trunk of a car." *Id.* ¶ 43. Bourke also expressed concern to Graham that the Building 1, Section C entrance would not be open for screening at 5:00 a.m. when he typically arrived for his 6:00 a.m. shift. Graham communicated this concern to Wirtjes, who replied in an e-mail:

> Doors are scheduled to be open at 5. Why does he need to be at work an hour early? I may not have the whole story, but I am trying to find what is not reasonable about this. From your perspective, what do you think?

Def.'s Stmt. of Material Facts, Ex. 19. Graham replied that the temporary spot in front of Building 1, Section C would "allow for better parking, screening and less walking to access his scooter." *Id.*

On May 18, 2020, Graham offered Bourke the reserved parking spot in front of Building 1, Section C. Schierer e-mailed the Engineering Department that same day to request a "rush installation of a reserved parking spot" sign at that location. Def.'s Stmt. of Material Facts, Ex. 20.

"On June 3, 2020, after meeting with Graham, Bourke declined the offered temporary reasonable accommodation 'for safety concerns for the secure storage of my equipment.'" *Id.* ¶ 51. Afterwards, Bourke sent the following e-mail to Graham:

> Per our conversation today, I will continue to park by Bldg. 228 handicap spot and enter into my work station ASU basement of Bldg. 200, in order to leave my scooter in a locked-secure area at my work station. The added distance and ambulation and subsequent pain, will be endured for safety concerns for the secure storage of my equipment. I will await the opening of the back of Bldg. 200 (outpatient pharmacy) to park in my RA assigned parking area #1011. Why the 16 or so handicap parking areas behind Bldg. 200, which are close to entry and convenient, are still denied access for Veterans to utilize[ ], makes no sense what-so-ever?

6

Def.'s Stmt. of Material Facts, Ex. 21.

On June 29, 2020—about one and one-half months after Bourke's arrangements were changed—the pharmacy entrance re-opened and he was able to resume using his original reserved parking space. That same day, Bourke filed a formal complaint with the VA's equal employment opportunity office. After a hearing before the Equal Employment Opportunity Commission, an Administrative Judge "concluded that the VA offered Bourke an effective accommodation but that Bourke ceased participating in the interactive process when he declined to accept the offer and refused to consider any alternative to his accommodation of choice." Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 57. The VA's EEO office adopted the AJ's decision. After exhausting his administrative remedies, Bourke filed this lawsuit, alleging that the VA violated the Rehabilitation Act by "unilaterally rescinding" his reasonable accommodation and "requir[ing] [him] to use a parking space across from Building 228 that was about three-quarters of a mile from his work-place." Compl. ¶ 9, 12.

## Discussion

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "construe all facts and draw all inferences in the light most favorable to the non-moving party." *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 459 (7th Cir. 2021).

"The Rehabilitation Act requires a federal employer to reasonably accommodate the known physical and mental disabilities of a qualified employee." *McCray v. Wilkie*, 966 F.3d 616, 620–21 (7th Cir. 2020). "The Rehabilitation Act incorporates the

standards of the Americans with Disabilities Act in determining whether an employer has discriminated against its employee, and so [courts] look to cases decided under both statutes in evaluating an employer's compliance with this duty." *Id.* at 621. To survive summary judgment on a failure-to-accommodate claim under the Rehabilitation Act or the ADA, a plaintiff must "present evidence that, if believed by a trier of fact, would show that she is a qualified individual with a disability, that the [defendant] was aware of her disability, and that the [defendant] failed to reasonably accommodate the disability." *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008). For purposes of the parties' cross-motions for summary judgment, the VA does not dispute that Bourke was a qualified individual or that it was aware of Bourke's disability. Thus, the only disputed question is whether the VA "failed to reasonably accommodate the disability." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (2013).

### A. Whether the VA must show that permitting Bourke to enter through the pharmacy entrance caused undue hardship

Bourke argues that, although the VA originally accommodated his disability by providing him a reserved parking spot behind Building 200, it "unilaterally rescind[ed]" that reasonable accommodation. Pl.'s Cross-Mot. for Summ. J. at 6. He argues that the Rehabilitation Act prohibits the VA from rescinding a reasonable accommodation unless it can show that the accommodation causes an "undue hardship." *Id.*

Bourke cites to *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002), for the proposition that, once a plaintiff has made a showing that "an 'accommodation' seems reasonable on its face, . . . the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." The issue with Bourke's argument, however, is that *Barnett* addressed

8

a situation in which the employer declined to provide *any* reasonable accommodation. *See id.* at 395 (stating that the defendant airline "decided not to make an exception" to its seniority system for certain preferred assignments to accommodate the disabled plaintiff's physical limitations, resulting in the plaintiff losing his job). Under those circumstances, Bourke is correct that the employer must show that a reasonable accommodation proposed by an employee would impose an undue hardship. *See* 42 U.S.C. § 12112(b)(5)(A) (employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business").

But this does not mean that an employer is required to demonstrate undue hardship any time that it rejects an employee's preferred accommodation and instead provides an alternative reasonable accommodation. To the contrary, the Seventh Circuit has long held that "[i]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000); *see also EEOC v. Charter Commc'ns, LLC*, 75 F.4th 729, 742 (7th Cir. 2023) ("We also emphasize that the employer need not provide the exact accommodation the employee asks for, which we have said repeatedly."). Bourke provides no authority for the proposition that an employer cannot alter the reasonable accommodations it provides to an employee in response to changing circumstances. Such a rule would be in tension with Seventh Circuit precedent emphasizing an employer's discretion to choose among reasonable accommodations.

Thus, even if the Court views the VA's actions as rescinding Bourke's original reasonable accommodation, the VA must show undue hardship only if it provided no alternative reasonable accommodation. The Court concludes that Bourke has not pointed to evidence that would permit a reasonable jury to find that the VA did not promptly provide an alternative reasonable accommodation. First, it is undisputed that, one day after the VA's March 12 e-mail informing all employees about the upcoming COVID-19 entry restrictions, Bourke contacted and arranged an agreement with the VA Police to continue using the pharmacy entrance. *See* Pl.'s Cross-Mot. for Summ. J. at 7–8 ("[Deputy Chief] Ousley agreed to plaintiff's requested accommodation and gave plaintiff permission to enter through the pharmacy entrance on the understanding that he 'will continue to be screened every day.'"). It is also undisputed that, after the VA locked that entrance on May 14 in response to an employee complaint, the VA began searching for an alternative accommodation for Bourke that same day. The Building 1, Section C entrance was floated as an idea to Bourke by the next day (May 15), and it was formally offered to him on May 18. Thus, as long as the Building 1, Section C solution was a "reasonable accommodation"—an issue the Court will discuss below— Bourke cannot say that the VA denied him a reasonable accommodation so as to trigger the undue-hardship analysis. Rather, Bourke can at best say that the VA switched from providing one accommodation to another. As discussed, the Rehabilitation Act does not require courts to "disturb [the employer's] chosen method of accommodation" as long as the accommodation is reasonable. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001).

The parties dispute the extent to which the VA acted unilaterally as opposed to

engaging in an "interactive process" with Bourke, as it is required to do under ADA regulations. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). Viewing the evidence in the light most favorable to Bourke, it is true that the VA acted unilaterally in restricting access to the pharmacy entrance. It is also true that Bourke, and not the VA, initiated the reasonable-accommodation process in response to the VA's unilateral actions. In other words, the VA did not proactively consult Bourke about the closing of the pharmacy entrance before March 16 (the date the entrance policy went into effect) or May 14 (the date that Bourke was locked out). But that fact alone is not sufficient to show a violation of the Rehabilitation Act. "[T]here is no independent cause of action for breakdown of the interactive process under the ADA. Liability arises from these types of allegations only when 'the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual.'" *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) (internal citation omitted); *see also Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) ("The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations."). The Seventh Circuit has instructed that "[i]n this area of the law," courts should focus on "the ends, not the means." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).

Finally, Bourke argues that the VA's unilateral decisions regarding the pharmacy entrance violated various provisions of the VA Handbook. But an employer's internal policies do not alter the minimum requirements of the Rehabilitation Act. It is well established that an employer's policies and practices "may well go above and beyond

11

what the [Act] requires" and that the employer need not "continue to go beyond the [Act's] requirements" to avoid future liability. *Tate v. Dart*, 51 F.4th 789, 800 (7th Cir. 2022). Bourke therefore has not shown how the VA's alleged violation of its internal Handbook tends to show that the VA failed to provide a reasonable accommodation for purposes of his Rehabilitation Act claim.

With these principles in mind, the Court addresses the remaining question: whether the VA offered Bourke a reasonable accommodation.

**B.      Whether the Building 1, Section C accommodation was reasonable**

The VA argues that no reasonable jury could find that its proposed accommodation—that Bourke park in a reserved space in front of the Building 1, Section C entrance and store his scooter inside the Patient Advocate Department space—was unreasonable. Bourke argues that the accommodation was not reasonable because "Building 1 was far from his work area and did not provide a place for plaintiff to safely secure his scooter." Pl.'s Cross-Mot. for Summ. J. at 5. The Court will address each issue in turn.

**1.      Distance**

First, the Court concludes that Bourke has not provided any evidence that would permit a reasonable jury to conclude that the proposed accommodation was unreasonable because the distance he was required to walk was too far. The VA's evidence suggests that its proposed accommodation minimized the amount of walking that would be required between the proposed reserved parking spot directly in front of Building 1 and the proposed storage spot inside the Patient Advocate space inside that building. To dispute this evidence, Bourke points to his deposition testimony where he

12

stated that Building 1 was "way, way too far away from [his] work station." Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 47. But the fact that Building 1 was far away from his *work station* says nothing about the distance between the proposed parking spot and the Patient Advocate space, where Bourke could then board his scooter to reach his work station.

Bourke also argues that "[n]o one measured the distance plaintiff would have been required to walk" between the proposed parking space and the Patient Advocate space. Pl.'s Cross-Mot. for Summ. J. at 13. But it is Bourke's burden, as the plaintiff, to provide evidence that the distance was unreasonable. *See King*, 550 F.3d at 600.

Bourke next cites to the fact that in December 2020 a VA facility planner measured the distance between a different parking spot and a different secured storage area in a different building and found it was "pushing the 40-50 ft distance marker for the [reasonable accommodation]." Pl.'s Cross-Mot. for Summ. J. at 13. The Court cannot see, and Bourke does not explain, how this has any relevance to the distance between the parking spot and scooter storage space proposed several months earlier in May 2020.

Bourke also cites to an e-mail sent by Graham that stated that Bourke "will need assistance with getting to his car." Pl.'s Cross-Mot. for Summ. J. at 12. The VA argues that, read in context, Graham meant only that he would need assistance *on the day* of the transition (because if he got off and stored his scooter in Building 1, Section C, he would not be able to walk to his car parked in his old spot behind the pharmacy entrance of Building 200). Even if the court credits Bourke's interpretation of the e-mail, however, he does not explain why the fact that the VA would need to assist him in

13

getting to his car would permit a reasonable factfinder to find that the proposed accommodation is unreasonable. In other words, there is nothing patently unreasonable about a proposed accommodation in which Bourke would park his scooter and then get VA assistance to reach his car parked in a reserved spot.

Finally, nothing in the record suggests that Bourke ever communicated to the VA that he was rejecting the proposed accommodation due to the distance he would be required to walk between the reserved parking spot and the scooter storage area. To the contrary, in an e-mail to VA staff, Bourke stated that he was rejecting the proposed accommodation "for safety concerns for the secure storage of my equipment." Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 51. Although Bourke testified in his deposition that he complained to Graham that the Building 1, Section C entrance as too far from his work station, as the Court has discussed, that is not evidence that Bourke informed the VA that the distance he was required to walk was too lengthy. Furthermore, Bourke testified that he would have accepted the Building 1, Section C accommodation if the VA had provided him with a locked closet in which to store his scooter (an issue that the Court will discuss next). "If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process." *Sears, Roebuck & Co.*, 417 F.3d at 797. Thus, even if Bourke had provided evidence that the VA's proposed accommodation was unreasonable because it required him to walk too far, the VA would not be liable under a failure-to-accommodate theory for an issue that Bourke never hinted at despite a clear opportunity to do so.

14

### 2. Security

Bourke also argues that the accommodation was unreasonable because the VA did not offer him a dedicated, locked storage space for his scooter. Bourke, however, does not deny that the "[w]hile the Patient Advocate Department space did not offer a dedicated, locked room for Bourke to store his scooter, the Patient Advocate space was outside of the public view and common areas, was near the VA Police Department, and was not a space with after-hours traffic." Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 44. In addition, Bourke does not dispute that Graham and another VA employee had been parking their scooters in the Patient Advocate space overnight and on weekends without incident after the implementation of the COVID-19 restrictions. Nevertheless, Bourke argues that his scooter was easier to steal because it could be taken apart to fit in the trunk of a car; therefore the VA was required to provide him with a dedicated locked storage space.

Again, however, the Rehabilitation Act does not require the VA "to provide the particular accommodation that [Bourke] requested." *Jay*, 233 F.3d at 1017. Although Bourke testified during his deposition to hearing that someone had stolen a scooter in another part of the hospital, there is no evidence that there was a significant risk that someone would steal and disassemble Bourke's scooter from the non-public-facing Patient Advocate space. Under these circumstances, Bourke's speculative concerns that his scooter might be stolen are not sufficient to create a genuine dispute over whether the VA's proposed storage space was a reasonable accommodation.

In sum, the Court concludes that Bourke has not carried his burden at summary judgment of "present[ing] evidence that, if believed by a trier of fact, would show that

. . . the [VA] failed to reasonably accommodate [his] disability." *King*, 550 F.3d 598, 600 (7th Cir. 2008). The Secretary of the VA therefore is entitled to summary judgment on his claim under the Rehabilitation Act.

## Conclusion

For the reasons stated above, the Court grants the defendant's motion for summary judgment [dkt. no. 29] and denies Bourke's cross-motion for summary judgment [dkt. no. 34].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 11, 2024